## A. E. McDow v. The State.

1. CONTINUANCE — POSTPONEMENT — NEW TRIAL.— The day next before the trial of a theft case the defendant sued out a subpoena for two witnesses, and it was served on them the same day. When called for trial he moved for a continuance or a postponement on account of the non-attendance of one of them and the inebriety of the other. The trial court, after offering to attach the absent witness and holding the other to be sober enough to testify, overruled the motion, and the defendant was forced to proceed, and was convicted on evidence chiefly circumstantial. See the opinion *in extenso* for

all the reasons on which it is *held* that the court below should have either sustained the motion or have granted a new trial.

2. Practice — Bill of Exceptions.— The Code of Procedure, article 686, provides for the allowance of bills of exception in criminal actions, and requires the judge's signature thereto, "under the rules prescribed in civil suits." Note in the opinion the collocation of new regulations adopted in the revision of the Civil Statutes, and which are also applicable to criminal cases.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. MOORE.

Appellant was convicted of cattle-theft, and a term of two years in the penitentiary was assessed as his punishment. The opinion discloses everything relevant to the rulings.

*Phelps & Haidusek*, for the appellant.

*Thomas Ball*, Assistant Attorney General, for the State.

WINKLER, J. This case was called for trial in the court below December 1, 1880. Counsel representing the State announcing ready, the defendant applied to the court, by affidavit, for a continuance of the case until the next term, or, in the event a continuance should be refused, that the trial be postponed to some future day of the then present term, on account of the absence of two witnesses, to wit: William Gates and Mrs. S. A. McDow, the mother of the defendant. The testimony expected to be elicited from these witnesses is set out in the defendant's affidavit. It is stated that the witnesses resided in Fayette county, and had been regularly subpœnaed as witnesses in the case. Otherwise, the formal averments in the affidavit for a continuance or postponement appear to be full and complete. By the exhibits attached, one of which is the subpœna for the witnesses and the officer's return thereon, it is shown that the witnesses had been served on

November 30, 1880, and, with special reference to the witness Mrs. McDow, it is stated in the affidavit that she is absent "because she has a child very sick at home, and that she cannot leave her sick child, which demands her constant care and attention." In support of this averment there is appended as an exhibit to the affidavit the following written statement of Mrs. McDow, dated December 1, 1880: "My little daughter is sick in bed, has been for several days, and it is impossible for me to leave her, as I have no one to leave with her."

The application having been heard, it was overruled, and the trial was ordered to proceed. The defendant excepted to the ruling, and the judge, in explanation of his ruling, appends to the bill of exceptions, among other things, the following statement: "When the application for continuance was presented, which was about 11 o'clock, A. M., the court overruled the same, saying, if it was the wish of counsel for defendant, said witness (Mrs. McDow), who lives some seven miles distant, would at once be sent for, attached, and brought before the court in time to testify. The proposition was not accepted by counsel, nor did they ask for said attachment till 2 o'clock, P. M., which was then ordered and said witness attached, and was brought to the court-house, not until the argument was closed. As to the witness Gates, he was present, and in the judgment of the court sufficiently sober to testify, as will appear in a separate bill of exceptions."

In a subsequent bill of exceptions it is perceived that, the case being on trial and the defendant having introduced such witnesses as were present in court, stated that he could not further proceed with the trial unless the witness Gates, who was then in a state of intoxication, was in a condition to testify. The court ordered the witness to be brought into court, and he was interrogated by defendant's counsel privately, and they announced to the

court that said witness, by reason of his being intoxicated, was not in condition to testify, and again asked the court to postpone the further trial of the cause. The court then caused the witness to be sworn, and after asking him a few questions which the bill states "were answered in a maudlin, drunken manner," ordered counsel to proceed with the examination of the witness, which defendant's counsel declined to do on account of his intoxicated condition. Thereupon the court ordered the cause to be "given to the jury upon argument of counsel." The judge, when asked to sign a bill of exceptions to the ruling, appended the following qualifications and explanations: "The said witness Gates was drunk in the morning of the trial; the court ordered him placed in jail, to be confined until sober enough to testify. When the defense closed their testimony in the evening the court had the witness brought into court, and examined him to discover his condition. His answers showed him capable and sufficiently sober to testify, and the court so adjudged. The defense refused to ask him any questions or in any manner to test his ability to give his testimony." This explanatory statement of the matter is signed by the judge presiding, and is followed by the following statement which is also signed by the judge: "Upon presenting to counsel for defendant the above qualifications to this their bill of exceptions, they refused the same, and gave notice they would proceed under the statute to procure the signature of bystanders. It will be observed this bill of exceptions pretends to give only the opinion of counsel, tried privately out of court, as to the condition of the witness Gates; and this bill of exceptions, with the qualifications and explanations, is made out by the court and signed as the bill of exceptions." There also appears from the transcript of the record the bill of exceptions above referred to as first presented to the judge for his signature, leaving out of view the explanations and quali-

fications of the judge, with the following certificate appended: "We, the undersigned citizens of said state and county, who served as jurors in the above entitled and numbered cause, hereby certify that the foregoing bill of exceptions is correct and presents a true statement of the facts as they occurred in our presence, as well as the condition of the witness William Gates." This certificate purports to have been signed by three members of the jury. To this is appended the following by the judge, giving his reasons for withholding his signature to the bill: "The foregoing is a copy of the bill of exceptions which was refused by the court. As the court had amended the original bill, and adopted the same with amendments, his refusal to sign said original is therefore indorsed on this copy, which is to be considered the original,"— Marked "Refused," and signed by the judge.

Following next in the order of proceeding is the following affidavit of three affiants, omitting formal portions where their names are set out: "That they saw the witness William Gates when he was brought into court and sworn as a witness in said cause, and heard the questions put to him by the district judge, and his answers thereto; that from his actions and answers they were satisfied that the said witness William Gates was so much intoxicated as to render him entirely incompetent to testify in an intelligent manner at said time." We have deemed it proper to set out so much of the record in order that our conclusions and rulings may be understood. It should also be noticed in this connection that there is appended to the defendant's motion for a new trial an affidavit of the witness Gates, in which he states that when the case was tried he was "under the influence of liquor; that he does not recollect being called as a witness in said cause, nor does he recollect being sworn and examined by the judge presiding as to his condition; that he had been under the influence of liquor the day prior to said trial as

well as on the day of trial, and knows nothing about what transpired in said court during said trial or while he, affiant, was in said court-house upon the witness stand, except what has been told him by others since the close of said trial." We propose to consider, as the most important features of the case, the question of continuance and the ruling of the court on the motion for a new trial, in connection with certain provisions of law as found in the Revised Code of Criminal Procedure, and incidentally certain questions of practice under the same Code.

Article 560 prescribes what the defendant, in a first application for a continuance on account of the absence of a witness, must do in order to obtain it. He must state under oath, 1, the name of the witness, and his residence if known, or that his residence is not known; 2, the diligence which has been used to procure his attendance, and it shall not be considered sufficient diligence to have caused to be issued, or to have applied for, a subpœna, in cases where the law authorizes the issuance of an attachment; 3, the facts which are expected to be proved by the witness, and it must appear to the court that they are material; 4, that the witness is not absent by the procurement or consent of the defendant; 5, that the application is not made for delay; 6, that there is no reasonable expectation that the attendance of the witness can be secured during the present term of the court by a postponement of the trial to some future day of said term. And it is declared that the truth of the first or any subsequent application, as well as the merit of the grounds set forth therein and its sufficiency, shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right. To this is annexed the following proviso, to wit: "*provided*, that, should an application for a continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the

application was of a material character, and that the facts set forth in said application were probably true, a new trial should be granted, and the cause continued for the term, or postponed to a future day of the same term." Art. 560, subdivision 6.

On the question of diligence it is seen in subdivision 2, above, that it is not sufficient diligence to have caused to be issued, or to have applied for, a subpœna in cases where the law authorizes the issuance of an attachment. In this connection the Code defines when an attachment may issue to compel the attendance of a witness in a criminal action or proceeding. When the witness resides out of the county in which the prosecution is pending, it is provided that "the defendant shall be entitled, on application either in term time or in vacation, to the proper clerk or magistrate, to have an attachment issued to compel the attendance of such witness. The application for an attachment under these circumstances "shall be in writing and under oath, shall state the name of the witness and the county of his residence, and that his testimony is material to the defense." The State shall also be entitled to attachments under the provisions of the same article, upon the written application of the attorney representing the State, and the statute requires that such application "shall state the name and residence of the witness, and that his testimony is believed to be material for the State." In cases provided for in article 489, it is not required that there should be a disobedience of a subpœna by the witness before the issuance of the attachment. On the contrary, the attachment may be issued in the first instance. "When a witness who resides in the county of the prosecution has been duly served with subpœna to appear and testify in any criminal proceeding *fails to so appear,* either the State or the defendant shall be entitled to have an attachment issued forthwith for such witness." Art. 488. The differences

in the circumstances under which a witness may be attached when residing in the county of the prosecution, or when residing out of the county where the prosecution is pending, are clearly indicated in these two articles of the Code.

The provisions of article 488 apply to the witnesses for whom the continuance in the case under consideration was sought, it being alleged in the affidavit that they reside in the county of the prosecution. It is said that they had been duly served with subpœna and had failed to appear. In this state of case an attachment could properly have issued, they being within the meaning and intent of subdivision 2 of art. 560; in which case an attachment for the witness would be allowable. In the present case the witnesses had been subpœnaed, but no attachment had been issued or applied for, at the time the continuance or postponement was applied for. Nor was it necessary. It is not shown that either of the witnesses had, up to the time of the making the application, refused to obey the subpœna; on the contrary, it very clearly appears that the witness Gates was in the custody of John Barleycorn, but in attendance on the court, too much intoxicated to appear in court, and was placed in custody by the judge until he became sufficiently sobered off to give his testimony; and as to the witness Mrs. McDow, it is shown that she was not in attendance, but was confined at home in the necessary attendance upon a sick child. We know of no rule of law by which the showing or excuse of the witness for non-attendance would of itself be sufficient. It is one of those extraordinary cases which sometimes arise, and which seems not to be within the language of the statute. If the witness had been proceeded against for failing to obey the subpœna, under the provisions of the Code, article 480 and following, then it would have been within the discretion of the court to judge of the sufficiency of an excuse rendered by

the witness (art. 485); but this is not the question under
consideration.   The question is not whether a fine against
the witness should have been imposed; or, having been im-
posed, shall be perpetuated in whole or in part, or re-
mitted altogether; but it is this, Was the court required
in the first instance, in the exercise of a sound discretion
confided in it by subdivision 6 of article 560, to grant
either the continuance or the postponement asked by the
defendant, or should the court, in the second place, have
granted a new trial after hearing the testimony of the
witnesses who were present and who had testified ?

In determining these questions it is well to observe the
length of time intervening between the date of the appli-
cation, so far as a postponement is concerned, and the
time of the adjournment of the court for the term.   The
application was made on December 1, 1880; the court,
agreeably to the caption of the transcript, adjourned on
December 14, 1880.   Leaving out of the estimate both
the day the application was made and the day of adjourn-
ment, twelve days remain.   This, we are of opinion, was
a sufficient time for the witness Gates to have suffi-
ciently recovered from his intoxication to have testified
understandingly, and for the child of Mrs. McDow to have
recovered, or to have enabled the mother to have pro-
cured some person to take care of it while she attended
the trial.

The Code, art. 568, provides for such a course in the
following language: " A continuance may be granted on
the application of the State or the defendant after the
trial has commenced, when it is made to appear to the
satisfaction of the court that, by some unexpected occur-
rence since the trial commenced, which no reasonable
diligence could have anticipated, the applicant is so taken
by surprise that a fair trial cannot be had; or the trial
may be postponed to a subsequent day of the term."
Code Crim. Proc. art. 568.   And on the same subject

Mr. Wharton says: "When the court is satisfied that a
witness is so drunk as to be unable to testify, he may be
excluded or his examination postponed until he is
sober," — citing several authorities. Wharton's Crim. Ev.
§ 384, *a.* Under a reasonable application of these authori-
ties, we are of opinion that, in view of all the circum-
stances surrounding the defendant at the time the
application was presented, the ends of justice and the
rights of the defendant to a full and fair trial under the
law required of the court either a postponement of the
trial (which, in our opinion, would have been most
proper), or else he should have granted the continuance.
So that, whilst the matter was confided to the sound dis-
cretion of the court, we cannot give our entire concur-
rence to the manner of its exercise in the present case;
on the contrary, we are of opinion the action of the court
was not only erroneous, but, in view of the fact that
much of the testimony is circumstantial, we believe that
the error was prejudicial to the rights of the defendant.
This is to us apparent when reviewing the whole of the
evidence adduced, and which it became incumbent on the
court below to do, in considering the motion for a new
trial, under the proviso of subdivision 6 of article 560, set
out above; and especially as the testimony sought to be
obtained from the absent witnesses, as set out in the ap-
plication, was, it seems to us, of a material character,
and there being nothing in the record to indicate that the
facts were not probably true. It is true that in some
particulars the testimony expected from the absent wit-
nesses was cumulative of testimony adduced; but, in a
case of felony when the main inculpatory facts are to be
proved by circumstances, the defendant should have the
benefit of all legal testimony at hand which tended to ex-
plain or controvert the testimony against him.

It is urged against the charge of the court that in some

of its paragraphs it tends to assume that certain facts
have been proved, which, it is contended, invaded the
province of the jury, and was upon the weight of the
evidence.   It is not deemed necessary in the present case
to do more than invite the attention of the judge below
to those matters, so that on a future trial the proper cor-
rections, if any be found necessary, may be made, and
the charge be so modified as to avoid a like controversy.

In the matter of practice in reserving bills of exception
to any action or ruling of the court, we understand the
rule to be as follows:   On the trial of any criminal ac-
tion the defendant, by himself or counsel, may tender
his bill of exceptions to any decision, opinion, order or
charge of the court, or other proceedings in the case, and
the judge shall sign such bill of exceptions, under the
rules prescribed in civil suits.  The object to be attained in
reserving a bill of exceptions is that the matter excepted
to may be revised on appeal.   Bills of exception in civil
suits are provided for, and the rules in relation thereto
are found in the Revised Civil Statutes, from art. 1358 to
art. 1367, inclusive.   The following articles, as well per-
haps as others, apply as well to criminal cases:   " Art.
1363. It shall be the duty of the party taking any bill of
exceptions to reduce the same to writing, and present the
same to the judge for his allowance and signature, dur-
ing the term and within ten days after the conclusion of
the trial.

" Art. 1364. It shall be the duty of the judge to sub-
mit such bill of exceptions to the adverse party or his
counsel, if in attendance upon the court, and if the same
is found to be correct, it shall be signed by the judge
without delay, and filed with the clerk during the term.

" Art. 1365. Should the judge find such bill of excep-
tions to be incorrect, he shall suggest to the party or his
counsel who drew it, such corrections as he may deem

necessary therein, and if they are agreed to he shall make such corrections and sign the same, and file it as provided in the preceding article.

"Art. 1366. Should the party not agree to such corrections, the judge shall return the bill of exceptions to him with his refusal indorsed thereon, and shall make out and sign, and file with the clerk, such a bill of exceptions as will, in his opinion, present the ruling of the court in that behalf as it actually occurred.

"Art. 1367. Should the party be dissatisfied with the bill of exceptions filed by the judge, as provided in the preceding article, he may, upon procuring the signatures of three respectable bystanders, citizens of this State, attesting the correctness of the bill of exceptions as presented by him, have the same filed as part of the record of the cause; and the truth of the matter in reference thereto may be controverted and maintained by affidavits, not exceeding five in number on each side, to be filed with the papers of the cause, within ten days after the filing of such bill of exceptions, and to be considered as a part of the record relating thereto."

There seems to have been no material departure from these rules, though it does not appear that there was much attention paid to them, as we find the matter set out in the transcript. Still, with reference to the future, we have deemed it not amiss to call attention to the changes in the law by the revision of the Code. From our conclusions with reference to the question of postponement, we deem it unnecessary to discuss the facts or any other matter presented. Because of error in forcing a trial in the absence of the defendant's witnesses, we are of opinion the judgment should be reversed and a new trial awarded the appellant; and it is so ordered.

*Reversed and remanded.*